THE STATE, EX REL. MORGAN, JUDGE, *v.* ARSHINKOFF ET AL.

(No. 11646—Decided April 11, 1984.)

*Mr. John E. Holcomb,* for relator.
*Mr. Anthony J. Celebrezze, Jr.,* and *Mr. Kevin R. Campbell,* for respondents.

MAHONEY, J. Relator, Judge Glen Morgan, brings this action in mandamus to compel the Summit County Board of Elections to place his name on the Republican Primary ballot in May 1984. He contends that his election to a full term in 1982 by virtue of the operation of law (R.C. 2301.02) was or may have been improper and the election should have been for the unexpired term of his predecessor. He believes R.C. 2301.02 may be unconstitutional. We find that it is, in those portions dealing with the abolishment of unexpired terms and creating new ones in their place.[1]

In the November 1978 general election, the Honorable Daniel B. Quillin was elected judge of the Summit County Court of Common Pleas, General Division, for the term commencing January 2, 1979. We take judicial notice that five other common pleas judges were elected for full terms that year. In February 1981, Judge Quillin resigned to join this court. The Governor appointed relator to fill Quillin's unexpired term until a successor was elected and qualified. In February 1981, the Secretary of State, in response to an inquiry by the Summit County Board of Elections, informed the board that under the provisions of R.C. 2301.02, the term commencing January 2, 1979, would be abolished in early 1983 and a judge elected in November 1982 for a new full six-year term. Based upon this advice the board placed a full term judgeship commencing January 3, 1983 on the ballot for the November 1982 election. Relator was elected to that seat.

On February 23, 1983, relator filed Declaration of Candidacy petitions for the Republican Primary for the common pleas term commencing January 2, 1985. (The seat originally held by Judge Quillin.) The board refused to place relator's name on the ballot because they believed that term was abolished in January 1983, by operation of law. On March 15, 1984, relator filed this petition to compel the board to place his name on the ballot for the term commencing January 2, 1985. Relator also named the Attorney General as a respondent since he challenges the constitutionality of R.C. 2301.02. The par-

---

[1] In so finding we do not decide whether "more than one-third of such judges plus one previously elected at the same election" means four or five when a common pleas court has ten judges.

ties agreed to submit the cause on briefs and stipulations.

Prior to 1959, R.C. 2301.02 and its predecessor, G.C. 1532, as amended from time to time, provided for the number of common pleas judges for each county and the date the term of office for each judge was to begin. Effective October 20, 1959, R.C. 2301.02 was amended to include the following provision:

"Notwithstanding the foregoing provisions, in any county having two or more judges of the court of common pleas, in which more than one third of such judges plus one were previously elected at the same election, should the office of one such judge so elected become vacant more than forty days prior to the second general election preceding the expiration of such judge's term, the office which such judge had filled shall be abolished as of the date of the next general election and a new office of judge of the court of common pleas shall be created. The judge who is to fill such new office shall be elected for a six year term at the next general election and his term shall commence on the first day of the year following such general election, on which day no other judge's term begins so that the number of judges which such county shall elect shall not be reduced." (128 Ohio Laws 149.)

Three months to the day after its enactment, the Supreme Court found this provision to be in direct conflict with Section 13, Article IV of the Ohio Constitution, and declared the provision unconstitutional. *State, ex rel. Gusweiler,* v. *Bd. of Elections* (1960), 170 Ohio St. 273 [10 O.O.2d 331]. The 1963 amendment of R.C. 2301.02 retained the unconstitutional provision, as did amendments in 1965, 1967, 1969, 1970, 1973, 1976, 1978, 1980, and 1982. On May 7, 1968, the Ohio Constitution was amended to implement various judicial reforms. Sections 1 and 2, Article IV of the Ohio Constitution were amended; Sections 3, 4, 6, 7, 8, 10, 12, and 14 of Article IV and Sections 12 and 13 of Article XI were repealed; and Sections 3, 4, 5, and 6 of Article IV were enacted. These reforms focused primarily on court supervision, rulemaking, organization, and mandatory retirement. Milligan & Pohlman, The 1968 Modern Courts Amendment to the Ohio Constitution (1968), 29 Ohio St. L.J. 811. The question before us now is whether the changes in the Constitution subsequent to 1960 were sufficient to remove the constitutional infirmity from the above-quoted portion of R.C. 2301.02.

The Modern Courts Amendment to the Ohio Constitution effected the first large-scale revision of Article IV since 1851. Only Sections 13, 15, 17, 18, 19, 20, 22, and 23 remained unchanged. The current form of Section 13, Article IV of the Ohio Constitution is identical to the provision the Supreme Court considered in *Gusweiler, supra,* and provides:

"In case the office of any judge shall become vacant, before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, until a successor is elected and has qualified; *and such successor shall be elected for the unexpired term, at the first general election for the office which is vacant that occurs more than forty days after the vacancy shall have occurred;* provided, however, that when the unexpired term ends within one year immediately following the date of such general election, an election to fill such unexpired term shall not be held and the appointment shall be for such unexpired term." (Emphasis added.)

In addition, the court in *Gusweiler, supra,* found that the general provisions of Section 15, Article IV of the Ohio Constitution, which authorize the General Assembly to create or abolish judgeships, could not supersede the specific provision of Section 13 and

thereby render the above-quoted parts of R.C. 2301.02 constitutional. Like Section 13, Article IV, Section 15, Article IV is identical to the provision considered in *Gusweiler, supra.* Respondents direct us, however, to the provisions of Section 6(A), Article IV of the Ohio Constitution as amended in 1973, which provide:

"(A)(1) The chief justice and the justices of the supreme court shall be elected by the electors of the state at large, for terms of not less than six years.

"(2) The judges of the courts of appeals shall be elected by the electors of their respective appellate districts, for terms of not less than six years.

"(3) *The judges of the courts of common pleas* and the divisions thereof *shall be elected* by the electors of the counties, districts, or, *as may be provided by law,* other subdivisions, in which their respective courts are located, for terms of not less than six years, and each judge of a court of common pleas or division thereof shall reside during his term of office in the county, district, or subdivision in which his court is located.

"(4) Terms of office of all judges shall begin on the days fixed by law, *and laws shall be enacted to prescribe the times and mode of their election.*" (Emphasis respondents'.)

The 1973 amendment of Section 6, Article IV left unchanged the 1968 Modern Courts Amendment provision of Section 6(A)(4), but made the following changes in Section 6(A)(3):

"The judges of the courts of common pleas AND THE DIVISIONS THEREOF shall be elected by the electors of the counties, DISTRICTS, OR, AS MAY BE PROVIDED BY LAW, OTHER SUBDIVISIONS, in which their respective courts are located, for terms of not less than six years, and each judge of a court of common pleas OR DIVISION THEREOF shall reside during his term of office in the county,

DISTRICT OR SUBDIVISION in which his court is located."[2]

The form of the 1973 amendment makes it clear that the intent of the amendment was only to allow the General Assembly to provide for common pleas judges in political or geographic districts or subdivisions other than counties. We see no way in which this amendment may be construed so as to repeal Section 13, Article IV by implication. *State, ex rel. Hoyt,* v. *Metcalfe* (1909), 80 Ohio St. 244, 259. We are left, then, with the question of whether Section 6(A)(4), Article IV of the Ohio Constitution invalidates the provisions of Section 13, Article IV. Section 6, Article IV was enacted subsequent to Section 13, but we find this to be of limited significance in light of the sweeping revision of Article IV in 1968; which at the same time enacted Section 6(A)(4) and left Section 13 intact.

Former Article IV of the Ohio Constitution did not contain the specific provisions found in Section 6(A)(4), though former Sections 1 and 2 of Article XVII provided:

"Elections for state and county officers shall be held on the first Tuesday after the first Monday in November in even numbered years; * * *.

"* * * *The term of office* of judges of the supreme court and courts of appeals shall be such even number of years not less than six years as may be prescribed by the general assembly; and that *of the judges of the common pleas court six years* and of the judges of the probate court, six years, and that of other judges shall be such even number of years not exceeding six years as may be prescribed by the general assembly. * * * [Emphasis added.]

"And the general assembly shall have power to so extend existing terms

---

[2] The language in capital letters indicates language added in 1973, pursuant to the practice of 135 Ohio Laws, Part I, 2026.

of office as to effect the purpose of Section 1 of this Article.

"Any vacancy which may occur in any elective state office other than that of a member of the general assembly or of governor, shall be filled by appointment by the governor until the disability is removed, or a successor elected and qualified. Every such vacancy shall be filled by election at the first general election for the office which is vacant, that occurs more than thirty days after the vacancy shall have occurred. The person elected shall fill the office for the unexpired term. All vacancies in other elective offices shall be filled for the unexpired term in such manner as may be prescribed by law."

We observe that the *Gusweiler* court specifically found the vacancy provisions of former Section 2, Article XVII did not repeal Section 13, Article IV by implication. We also note that while former Article IV of the Ohio Constitution did not specifically authorize the General Assembly to fix by law the days on which the terms of office of all judges shall begin, the Supreme Court recognized this authority as inherent in the grants under Sections 1, 3 and 15, Article IV of the Ohio Constitution. *State, ex rel. Gustafson,* v. *Krause* (1936), 131 Ohio St. 97 [5 O.O. 442]. The first phrase of Section 6(A)(4), Article IV formalizes rather than expands the General Assembly's authority to fix the starting day of the term, and effects no substantial change in the constitutional authority granted to the General Assembly at the time *Gusweiler, supra,* was decided. The only such change involves the authority to enact laws to prescribe the time and mode of election of judges.

Section 6(A)(4), Article IV of the Ohio Constitution has no effect on the General Assembly's authority to create or abolish judgeships. That authority is found in Section 15, Article IV. Section 6(A)(4), Article IV, also does not refer specifically to vacancies. Vacancies are treated specifically in Section 13, Article IV. The fact that Section 13, Article IV was retained in the face of sweeping judicial reforms and is specific and mandatory in its provisions regarding the election of a successor to fill a vacancy in the office of any judge convinces us that the provisions of Section 13, Article IV were not repealed by implication by the 1968 or 1973 amendments to Section 6(A), Article IV of the Ohio Constitution. We conclude that the specific provisions of Section 13, Article IV control in the instant case. *State, ex rel. Davis,* v. *Brown* (1954), 161 Ohio St. 346 [53 O.O. 251]. The Ohio Supreme Court has held that the above-quoted provision of R.C. 2301.02 is in direct conflict with Section 13, Article IV of the Ohio Constitution and is unconstitutional. The provision of R.C. 2301.02 at issue also abolishes the unexpired term as of the date of the general election, but does not start the term for the new office until the year following the general election. We feel that this portion of the statute may also be in conflict with Section 15, Article IV, which provides that no "change, addition, or diminution, shall vacate the office of any judge."

We conclude that because the statute is unconstitutional, it could not operate to abolish the term commencing January 2, 1979. Accordingly, we order that the writ issue as prayed for.

The writ is allowed.

*Writ allowed.*

BAIRD, P.J., and GEORGE, J., concur.